# UNITED STATES ex rel. COX *v.* HITCHCOCK.

---

APPELLATE PRACTICE; MANDAMUS.

1. Where, on an appeal from an order dismissing a petition for *mandamus*, the return of the respondent is omitted from the record, so that it cannot be determined whether the return was by demurrer to the petition or otherwise, this court will not assume that the return admitted the truth of the statements of the petition, and cannot, therefore, review the decision of the court below.

2. Where, in a proceeding for a writ of *mandamus* against the Secretary of the Interior to require him to approve a selection of public land under certain acts of Congress and allot the same to the relator, it does not appear that the Secretary's refusal to approve the selection made by the relator was arbitrary and without cause, but, on the contrary, it appears that the relator's allotment was assigned to him, but that he was dissatisfied with it and wished to have another in its place, the writ will not be issued, although it may further appear that he is equitably and justly entitled to the allotment he seeks, the duty of the Secretary in the premises not being a mere ministerial duty, but one requiring the exercise of judgment and discretion; *distinguishing* West v. Hitchcock, *ante*, p. 333.

No. 1129. Submitted January 9, 1902. Decided March 4, 1902.

HEARING on an appeal by the relator from an order of the Supreme Court of the District of Columbia, dismissing a petition for a writ of *mandamus* to the Secretary of the Interior.                                        *Affirmed.*

The COURT in its opinion stated the case as follows:

This case was argued in connection with that of *The United States ex rel. Willis C. West v. Ethan A. Hitchcock, Secretary of the Interior,* just decided [*ante,* p. 333]; and it seems to be assumed that the facts in both cases are somewhat similar; and that the questions of law involved are the same.

The relator, Emmet Cox, is a white man over 21 years of age, a resident on the reservation of the Kiowa, Comanche, and Apache tribes of Indians in the Territory of Oklahoma, and who, by intermarriage with an Indian woman of these confederated tribes and by formal adoption therein, became a member of the tribes and entitled as such to participate in the receipt of an allotment of land under the several treaties made between them and the United States,— one known as the Medicine Lodge Treaty, proclaimed on August 25, 1868, and the other made on August 6, 1892, and approved by an act of Congress of June 6, 1900.  31 Stat. 672–679.

By the Medicine Lodge Treaty it was provided, among other things, that any individual belonging to said tribes or

legally incorporated with them, being the head of a family, who should desire to commence farming, should have the privilege to select, in the presence and with the assistance of the agent then in charge, a tract of land within said reservation, not exceeding 320 acres in extent, for his own exclusive use and possession. In pursuance of it, the relator selected a tract of 320 acres. But it was subsequently ascertained that the 98th meridian, which constituted one of the legal boundaries of the reservation, had been incorrectly located, and that, in consequence of this error, the relator's tract was not within the limits of the reservation; and he was compelled to surrender it. On application to the Commissioner of Indian Affairs, he was allowed to select another tract of equal amount, which was confirmed to him and upon the use and occupation of which he entered; and he has now been in possession of it for upwards of three years, and has made valuable improvements upon it of a permanent character.

Under the treaty of August 6, 1892, to which the relator himself was a party on behalf of the Indians, it was provided that every member of the tribe over the age of 18 years should be permitted to select for himself a tract of 160 acres within the reservation, that the tract so selected should be allotted in severalty, and that every member of the tribe should have the undisputed right to make his selection of land so as to include improvements, if any, already made by him. And it was further specifically provided that the relator, who is designated by name in the treaty, should be entitled to all the benefits of land and money conferred by the terms of the agreement upon members of the tribe, " the same as if he were a member by blood of said tribe." Under this treaty the relator selected a tract of 160 acres of land, which was one-half part of that which he had selected and which had been confirmed to him under the Medicine Lodge Treaty. Confirmation of this selection was refused by the agents of the Department of the Interior, and the relator was directed to make another selection, which he did under protest. Subsequently ascertaining that the lands last selected by him were not desirable, he made application to the Com-

missioner of Indian Affairs for leave to change his selection, which the Commissioner allowed; and he selected another tract of 160 acres, which was subject to selection by him, and he took possession of it, inclosed it, and moved a house thereon.

Subsequently, however, the Secretary of the Interior disapproved the action of the Commissioner. Thereupon the relator applied to the Commissioner for leave to select 320 acres under the Medicine Lodge Treaty in the place of the tract originally selected by him and which he had surrendered. The Commissioner approved this application so far as to allow the relator to select 160, and not 320 acres. The relator accordingly selected a tract of 160 acres; but the Secretary of the Interior refused to confirm the selection on the ground that the Territory of Oklahoma had previously selected it for school lands. The relator was directed to make yet another selection, which he did; but the selection, although approved by the Commissioner, was disapproved by the Secretary of the Interior. Finally, the Secretary, of his own motion and without request by the relator, made an allotment to him of the tract of 160 acres, which he had previously selected under protest, and had thereafter surrendered as undesirable.

Thereupon the relator filed his petition in the Supreme Court of the District of Columbia for a writ of *mandamus* to require the Secretary of the Interior to approve the selections previously made by him, the relator, and to allot to him: (1) Under the Medicine Lodge Treaty, the tract of 320 acres on which he resided and had made improvements; and (2) under the treaty of 1892 and the act of Congress which ratified the same, the tract of 160 acres which had been assigned to him by the Commissioner of Indian Affairs immediately upon his surrender of the undesirable tract which he had previously taken under protest. A rule was issued to the Secretary of the Interior to show cause; and the Secretary made return to the rule. This return does not appear in the record before us; and we are not definitely advised of the nature of it. But upon the petition, the rule to show cause, and the Secretary's return to it, the court below discharged

the rule, and dismissed the relator's petition. From its order in that regard the present appeal had been prosecuted.

*Mr. William H. Robeson, Mr. William C. Shelley, Mr. Walter S. Field* and *Mr. Clayton E. Emig* for the appellant.

*Mr. Ashley M. Gould,* United States Attorney for the District of Columbia (*Mr. Willis Van Devanter,* Assistant Attorney-General, and *Wm. C. Pollock,* being with him on the brief) for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

While the substantial facts of this case are assumed by the appellant not to be different from those in the previous case of West, and it is conceded on behalf of the appellee that the same questions of law are presented in both, we find ourselves constrained by the condition of the record to take a different view of this case from that which we have expressed in the case of West.

In the case of West it is clearly stated that the relator had done everything necessary and proper to be done by him in the selection of his allotment under the law. The return to the rule to show cause in that case was a demurrer, which admitted the truth of this statement, and which relied merely upon the supposed discretionary power of the Secretary to give or withhold his approval, according to his own arbitrary will and pleasure. Here the return is omitted from the record, and we are not distinctly informed what it was, whether it was a demurrer on merely legal grounds, or whether it controverted to any extent the facts stated in the petition. The appellant in his brief says that it was a demurrer, and the appellee perhaps might be assumed to concede the truth of the statement, inasmuch as he says that the questions of law involved in both cases are the same. But the appellee, in his brief, seems to make a point of the fact that the transcript of record does not present the return made by the Secretary to the rule to show cause, and

he nowhere admits that this return was by way of demurrer. And his admission that the questions of law in the two cases are the same would not be inconsistent with the assumption that the Secretary's return may have raised some controversy as to facts.

We cannot supply this deficiency in the record. It may be true, as stated in the appellant's brief, that the Secretary's return to the rule was by way of demurrer; but in the silence of the record and in the absence of any admission to that effect by the appellee, it is very plain that we can not proceed upon the assumption of the truth of the appellant's statement. We can not assume that the return admitted the truth of the statements of the petition. The inference rather would be that it denied them. We can not see, therefore, how we can properly review the decision of the court below in the premises, when we have not the facts before us upon which that court acted; and certainly upon this state of the record we can not hold that decision to be erroneous.

But even if we were to assume that this case also, like that of West, was heard upon demurrer by the Secretary to the relator's petition, and so comes to us, it is not quite apparent to us that a case analogous in law to that of West would be made out here. In the case of West a simple issue was presented, whether, when the relator had done all that was required of him by law, the Secretary could arbitrarily and without cause refuse his approval of the relator's selection. Here there is a complicated state of facts which can not properly be reviewed in a proceeding for the writ of *mandamus*. From the statements of his petition it would appear that the relator had been rather harshly treated, and buffeted from one allotment to another; but it does not appear that his selections were disapproved arbitrarily and without cause, and the right of making a selection does not seem to have been denied to him, as it was to West. The right of approval reserved to the Secretary by the act of Congress, and which, of course, involves the right of disapproval, is not a mere ministerial duty. Plainly it requires the exercise of judgment and discretion. It re-

quires of the Secretary to determine whether the land selected is subject to selection, and whether all the pre-requisites required by the law to be performed in order to justify his approval have in fact been performed. In the West case it appeared definitely and positively that these pre-requisites had been performed, that the matter was no longer one of consideration by the Secretary, and that all that remained to be done was a mere ministerial thing. Here the relator has his allotment assigned to him; and the substance of his complaint is that he is dissatisfied with it and wishes to have another in its place. Now, it may be that he is equitably and justly entitled to the allotment which he seeks; but that is not a matter which can be determined under a writ of *mandamus.* The writ of *mandamus* is not intended for any such purpose; and we think that the court below was right in refusing it in this case.

The order appealed from will therefore be *affirmed, with costs. And it is so ordered.*